IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST MERCURY | : | |
| INSURANCE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KRISTOPHER ROSSI, et al., | : | No. 10-1097 |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                  March 31, 2011

Kristopher Rossi was injured when he was attacked by bouncers at the Grape Street Pub. Rossi subsequently sued the bar and others in the Philadelphia County Court of Common Pleas. First Mercury Insurance Company ("First Mercury") seeks a declaration that it owes no duty to defend or indemnify its insured, C & C Music Industries d/b/a Grape Street Philadelphia ("C & C Music"), against Rossi's lawsuit. First Mercury has filed for summary judgment and for the reasons below, the Court grants the motion.

## I.      FACTUAL BACKGROUND

First Mercury issued C & C Music Commercial General Liability Policy No. FMAP084974 ("the Policy") with a coverage period from July 30, 2007 to July 30, 2008. Pursuant to the Policy's Bodily Injury and Property Damage Liability Coverage, First Mercury agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,' caused by an 'occurrence', to which this insurance applies." (Pl.'s Mot. for Summ. J. Ex. A [Policy] at 16.) It also has "the right and duty to defend any 'suit' seeking those damages." (*Id.*) First Mercury has no duty to defend against any lawsuit seeking damages for bodily injury to which

the Policy does not apply. (*Id*.) The Policy defines an "occurrence" as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at 32.) "'Accidental' means unexpected or unintended." (*Id*. at 29.)

Among the Policy's exclusions is one for: "'Bodily injury' or 'property damage' expected or intended from the standpoint of any insured. This exclusion applies even if the 'claim' or 'suit' alleges negligence or other wrongdoing in the supervision, hiring, employing, training, monitoring, or contracting the services of others." (*Id*. at 16.) The Policy also contains an Assault and Battery Exclusion Endorsement. The Policy excludes:

> 1. Claims or suits to recover damages for bodily injury or property damage based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way connected with assault and/or battery . . . . Pursuant to this exclusion, the Company is under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:
>    a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, agents or servants; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured; or by any other person;
>    b. The alleged failure or fault of the insured, or his officers, employees, agents or servants, in the hiring, supervising, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;
>    c. The alleged failure or fault of the insured, or his officers, employees, agents or servants, to attempt to prevent, bar or halt any such conduct.
> 2. Additionally, this exclusion applies to any claim or suit by any other person, firm or organization, asserting rights derived from, or contingent upon, any person having or asserting a claim or suit which is excluded under paragraphs 1.a. through 1.c. above. In addition, this exclusion specifically excludes from coverage claims or suits for:
>    a. Emotional distress, or for loss of society, services,

     consortium and/or income;
  b. Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid for or incurred by such other person, firm or organization;
  c. Any obligation to share damages with or repay someone who must pay damages because of "bodily injury" or "property damage";

     all arising from actual or alleged assault and/or battery.

(Policy at 39 (emphasis in original omitted).) The Assault and Battery Exclusion also contains language similar to that quoted above but applicable to damages sought for "personal injury" or "advertising injury." (*Id*. at 40.) The Assault and Battery Exclusion defines "assault" as "apprehension of harmful or offensive contact between or among two or more persons by threats through words or deeds" and defines "battery" as "harmful or offensive contact between or among two or more persons." (*Id*.)

  On October 30, 2009, Rossi sued C & C Music and others in the Philadelphia Court of Common Pleas. He alleged that on October 31, 2007, he was a patron at the Grape Street Pub when employees of the establishment "acting in the course and scope of their employment or agency, and without provocation or cause, suddenly and without warning, violently grabbed plaintiff by his right elbow, then placed Plaintiff in a 'headlock' position, dropped Plaintiff to the floor, and then picked Plaintiff up by the neck and feet and dragged Plaintiff downstairs and onto the sidewalk in front of the premises, causing Plaintiff to suffer severe injuries." (Pl.'s Mot. for Summ. J. Ex. C [Rossi Compl.] ¶ 20.) As Rossi described it, the "assault . . . occurred suddenly and without warning, cause or provocation, and as a result, Plaintiff, Kristopher Rossi, sustained serious bodily injuries." (*Id*. ¶ 22.) Rossi also cites the "carelessness and negligence of the Defendants" as responsible for his

3

pain, suffering, loss of income, medical expenses, and future ills. (*Id*. ¶¶ 25-27.) The Rossi Complaint includes three counts. Count One is an assault claim due to the "assault and battery and/or negligent[] inflict[ion] [of] severe and grievous physical injuries upon Plaintiff as well as emotional distress" at the hands of the bouncers at the bar. (*Id*. ¶ 30.) Count Two is a battery claim which repeats the charges in the assault claim. (*Id*. ¶¶ 34-38.) Count Three is a negligence claim based on:

> a. Failing to properly supervise its employees including, but not limited to, its security personnel and bouncers;
> b. Failing to adequately screen and/or interview its employees, including but not limited to, its bouncers and/or security personnel who were involved in the attack on Plaintiff;
> c. Failing to properly train its employees, agents and servants, including but not limited to, its bouncers and/or security personnel in the proper handling and/or removal or patrons/invitees;
> d. Failing to protect the Plaintiff from the violent propensities of its employees, agents and servants, including but not limited to, its bouncers and/or security personnel;
> e. Failing to provide a safe environment for patrons, business invitees or pedestrians, such as the Plaintiff;
> f. Exposing patrons, business invitees or pedestrians, including Plaintiff to the physical assaults and violence of its employees, agents and servants, including but not limited to, its bouncers and/or security personnel;
> g. Failing to establish rules of conduct and procedure to be followed by its employees, agents and servants, including but not limited to, its bouncers and/or security personnel in the handling and/or removal of patrons/invitees;
> h. Negligence at law;
> i. Such other acts and/or omissions which constitute negligence, carelessness, gross negligence, and/or recklessness as may be learned through discovery proceedings or demonstrated by the evidence introduced at the time of trial.

(Rossi Compl. ¶ 40(a)-(i).) On March 5, 2010, First Mercury filed this declaratory judgment action. A number of Defendants have defaulted, including C & C Music.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party makes such a demonstration, then the burden shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

When evaluating a motion brought under Rule 56, a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). A court must, however, avoid making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Pennsylvania Contract Interpretation

Under Pennsylvania law, insurance contract interpretation, including questions of coverage,

is a question of law for the court.[1] *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). The ultimate aim is to ascertain the intent of the parties as expressed by the language of the contract. *See id*. The policy must be read as a whole and its meaning construed according to its plain language. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *see also Giancristoforo v. Mission Gas & Oil Prods., Inc.*, 776 F. Supp. 1037, 1041 (E.D. Pa. 1991) ("The policy must be construed as a whole, not in discrete units.").

A court must enforce the clear and unambiguous language in an insurance policy. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Moreover, a court should read a policy to avoid ambiguities and give effect to all of its provisions. *Id.*; *see also Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793 (3d Cir. 1987). If, however, the language of the policy is open to multiple interpretations, it is ambiguous and must be construed against the insurer as the drafter of the contract. *Watkins*, 198 F.3d at 103; *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

B.     **The Duty to Defend**

At issue here is the insurer's duty to defend, which is broader than the insurer's duty to

---

[1] First Mercury assumes that Pennsylvania law applies to this dispute. However, the Policy states that "all disputes relating to the parties' obligations under this policy, shall be interpreted, construed, governed by and enforced with the laws of the State of Illinois." (Policy at 29.) Rossi cites only Pennsylvania law in its opposition, and the Court will thus apply Pennsylvania law. The Court notes that the outcome of the case would not be different under Illinois law. *See Atl. Cas. Ins. Co. v. Harris*, Civ. A. No. 08-647, 2010 WL 624198 (S.D. Ill. Feb. 18, 2010) (assault and battery exclusion applied to litigation in which tavern patron was beaten by other patrons); *Century Sur. Co. v. John B., Inc.*, Civ. A. No. 04-7997, 2006 WL 140551 (N.D. Ill. Jan. 17, 2006) (no duty to defend underlying negligence, battery, negligent hiring action stemming from altercation with bouncers at bar).

indemnify. *Frog*, 193 F.3d at 746. The duty to defend is assessed by comparing the complaint to the policy. *See Gene's Rest., Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 246-47 (Pa. 1988); *United Servs. Auto Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986). The factual allegations in the underlying complaint must be taken as true and liberally construed in favor of the insured. *Frog*, 193 F.3d at 746 (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). The duty to defend arises if "the allegations in the complaint . . . could potentially fall within the coverage of the policy." *Victoria Ins. Co. v. Mincin Insulation Servs., Inc.*, Civ. A. No. 08-909, 2009 WL 2998144, at *2 (W.D. Pa. Sept. 15, 2009); *see also Sphere Drake P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999). This rule applies even when the lawsuit is "groundless, false, or fraudulent." *Britamco Underwriters, Inc. v. Weiner,* 636 A.2d 649, 651 (Pa. Super. Ct. 1994); *see also D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."). When determining whether a third-party complaint triggers coverage, the court focuses on the complaint's factual allegations, not the terminology used to name the causes of action. *Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, Civ. A. Nos. 08-1052 & 08-2484, 2009 WL 1220557, at *2 (E.D. Pa. Mar. 31, 2009) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)). First Mercury bears the burden of showing that a policy exclusion applies. *See Allstate Ins. Co. v. Brown*, 834 F. Supp. 854, 857 (E.D. Pa. 1993). If a policy exclusion applies, there is no duty to defend or indemnify. *Markel Int'l*, 2009 WL 1220557, at *3.

    **C.    Analysis**

        *1.    Assault and battery allegations*

The Assault and Battery Exclusion excepts coverage for "claims or suits to recover damages

for bodily injury" or "personal injury . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way connect with, 'assault' and/or 'battery.'" (Policy at 39-40.)

Pursuant to this exclusion, [First Mercury] is under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

> a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured; or by any other person;
>
> b. The alleged failure or fault of the insured, or his officers, employees, agents or servants, in the hiring, supervising, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;
>
> c. The alleged failure or fault of the insured, or his officers, employees, agents or servants, to attempt to prevent, bar or halt any such conduct.

(Policy at 39-40.)

The terms "assault" and "battery" are clear and unambiguous. The "tort of assault is defined as an intentional attempt by force to do any injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 F. App'x 179, 183 (3d Cir. 2006) (citations omitted). These definitions are consistent with the definitions of "assault" and "battery" contained in the Policy and which control here. Furthermore, Rossi is seeking to recover damages for bodily injury "based upon, arising out of, directly or indirectly, resulting from, in connection of, or in any way connected with 'assault' and/or 'battery.'" *See Markel Int'l*, 2009 WL

1220557, at *6 (noting that "arising out of" in connection with assault and battery exclusion means causally connected with and is satisfied by but-for causation).

The Rossi Complaint alleges that employees of the Grape Street Pub suddenly and violently grabbed Rossi by his elbow, placed him in a headlock, dropped him to the floor, picked him up by his neck and feet, and dragged him downstairs and onto the sidewalk in front of the bar. (Rossi Compl. ¶ 20.) As outlined in the Rossi Complaint, the allegations state a claim for assault and battery.

The Rossi Complaint, however, also accuses both the bouncers and the Grape Street Pub of negligence, and claims their negligence was also responsible for his injuries. (Rossi Compl. ¶¶ 30, 35.) This reference to negligence in the Rossi Complaint does not render the exclusion inapplicable. It is the factual allegations that create a duty to defend, not the recitation of any magical language related to concepts of negligence. *See Certain Underwriters at Lloyd's v. Cho*, 917 F. Supp. 353, 354 (E.D. Pa. 1996) (noting that regardless of language of allegations, negligence claims were excluded if original cause of harm stemmed from assault and battery). Furthermore, the Policy's exclusion applies to lawsuits seeking to recover for bodily injury "in any way connected with 'assault' and/or battery.'" This exclusion is broad enough to cover negligence claims that are connected with assault and battery claims. Accordingly, Rossi's allegations of negligent infliction of injuries fall within the assault and battery exclusion even if the intentional torts were accompanied by negligent action on the part of the bouncers.

Rossi relies on a case in which the Pennsylvania Superior Court concluded that such an exclusion did not apply. *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222 (Pa. Super. Ct. 2007). In *QBE*, bouncers wrestled David Potter down the stairs while placing him in a choke hold

9

and then threw him face down on the ground. They then laid on top of him until he suffocated. The underlying complaint charged that Potter's death was the direct and proximate result of the defendants' negligence and carelessness. The Superior Court determined that a duty to defend existed because a review of the complaint showed that the plaintiff claimed that the defendants' negligence directly led to Potter's death. 915 A.2d at 1229. This holding was in line with *Essex Insurance Co. v. Starlight Management Co.*, 198 F. App'x 179 (3d Cir. 2006), in which the Third Circuit held that an insurance company was required to defend a lawsuit alleging negligence after a nightclub patron suffered injuries when security personnel forcibly removed him.

Both of these cases are distinguishable because they sought damages based only upon allegations of negligence. *See id*. at 184 ("The amended complaint clearly seeks recovery based only upon negligence."); *Regis Ins. Co. v. Kenny's Bar & Rest.*, 4 Pa. D & C5th 6, 19 (Phila. Ct. Com. Pl. 2008) (distinguishing *QBE* because underlying complaint "did not set forth a cause of action for assault and battery, but rather, alleged claims solely grounded in negligence").

Here, the facts of the Rossi Complaint focus on the alleged assault and battery and blame the intentional actions of the bouncers for his injuries. Additionally, the Policy excludes claims for bodily injury "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way connected with 'assault' and/or 'battery.'" This language is broader than that found in the exclusion in *QBE*. Thus, even if the Rossi Complaint includes factual allegations of negligence, the damages sought all arise out of, or at least indirectly result from, the assault and battery at the hands of the bouncers.

   2.  *Negligence allegations*

The Rossi Complaint also includes a claim for negligence. Specifically, the Rossi Complaint

alleges negligence against the Grape Street Pub for, among other things, failure to properly train employees, failure to protect Rossi by preventing the assault and battery, and failure to properly supervise and screen its employees.

These allegations do not create a duty to defend on the part of First Mercury. The Assault and Battery Exclusion explicitly excepts coverage for the alleged failure of the Grape Street Pub in the hiring, supervision, retention or control of any person, as well as the alleged failure or fault of the insured, or his officers, employees, agents or servants, to attempt to prevent, bar or halt an assault or battery.

A number of courts applying Pennsylvania law have concluded that an insurer has no duty to defend an insured based on an assault and battery exclusion even if the third-party complaint included claims of negligence in failing to prevent the underlying assault and battery. *See Markel Int'l*, 2009 WL 1220577, at *7 (collecting cases); *Cho*, 917 F. Supp. at 354-55 ("That [defendant] may have been negligent in not preventing the injuries does not take this case out of the assault and battery exclusion."); *Terra Nova Ins. Co. v. Thee Kandy Store, Inc.*, 679 F. Supp. 476, 478 (E.D. Pa. 1988) ("Although [the plaintiff] claims that the defendants in his Common Pleas action were negligent in preventing the assault and battery, this allegation is not sufficient to avoid a properly executed assault and battery exclusion. Regardless of the language of the allegations, the original cause of the harm arose from an alleged assault and battery."). In *Acceptance Insurance Company v. Seybert*, 757 A.2d 380 (Pa. Super. Ct. 2000), Michael Seybert filed a lawsuit alleging he was attacked outside a hotel parking lot after a night of drinking at the Belmont Bar. He also claimed that the Belmont Bar was negligent in serving alcohol to visibly intoxicated persons. Acceptance Insurance, the Belmont Bar's liquor liability carrier, filed a declaratory judgment action arguing that

11

it had no duty to defend or indemnify the Belmont Bar. The Superior Court agreed with the insurance company because the underlying complaint contained no allegations that the injured party was harmed other than by an assault and battery. *Id*. at 383. Similarly, a court in this District held that there was no duty to defend stemming from an assault and battery at an insured's establishment in *Alea London Limited v. 65 Bog, Inc.*, Civ. A. No. 05-1046, 2006 WL 1030247 (E.D. Pa. Apr. 19, 2006). The victim of the crime alleged that the business where she was assaulted and its employees were negligent by failing to: supervise the premises and patrons; have adequate personnel and security; properly train employees; and screen customers. 2006 WL 1030247, at *2. The court concluded that policy language excluding "any act or omission in connection with prevention or suppression of an assault and battery, committed by any insured or an employee or agent of the insured" covered allegations that the insured was negligent for failing to suppress or prevent the assault. *Id*. at *6.

In this case, the allegations of negligence clearly stem from the failure to properly train and supervise bar employees. Rossi's injuries, however, allegedly resulted from the assault and battery by the bouncers at the Grape Street Pub. They were not directly caused by the negligent failure to train or to supervise or to protect patrons, or the negligent hiring of the perpetrators of the assault and battery. *See Victoria Ins.*, 2009 WL 2998144, at *5 (holding assault and battery exclusion applied because third-party complaint contained no allegations of injuries other than those caused by physical attack or that insured's negligence directly caused injuries). Without allegations that Rossi suffered injures apart from those stemming from the assault and battery or allegations that the insured's negligence directly caused his injuries, there is no duty to defend under the Assault and Battery Exclusion. *See id*.

3.  *Extrinsic evidence*

Rossi argues that deposition testimony from the underlying state court litigation confirms that the defendants' negligence caused Rossi's injuries. (Rossi's Mem. of Law in Supp. of Def.'s Answer in Opp'n to Pl.'s Mot. for Summ. J. [Rossi's Mem.] at 5-6.) He claims that he was injured when he was negligently removed from the bar. (Rossi's Answer to Mot. for Summ. J. ¶¶ 14-16, 24-25.)

As an initial matter, under Pennsylvania law, it is not appropriate for the Court to conduct an examination of matters outside the four corners of the underlying complaint to determine whether a duty to defend exists. *See State Farm Fire & Cas. Co. v. The Estate of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (refusing to consider facts outside underlying complaint "even though there was discovery . . . in which more germane facts may have surfaced" because duty to defend arises based on allegations in complaint); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) ("We find no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself."). Recently, a court in this District considered whether it was proper to consider facts outside the complaint in deciding if a duty to defend existed. *Nationwide Mut. Fire Ins. Co. v. Malofiy*, Civ. A. No. 10-2410, 2011 WL 1050050, at *2, 5, 7, 9 (E.D. Pa. Mar. 22, 2011). The court noted that a number of states reject the "four corners" rule and permit the consideration of extrinsic evidence. *Id.* at *7 n.10. Furthermore, the court recognized that the refusal to consider evidence which may show that the insured is entitled to coverage "seems harsh." *Id.* Nonetheless, Pennsylvania follows the minority rule and excludes extrinsic evidence in determining the duty to defend. *Id.* Thus, the court excluded the submitted extrinsic evidence and

refused to look beyond the complaint and the policy to decide the coverage dispute. *Id*. at *9. ("The determination of whether an insurer has a duty to defend is determined solely by considering the factual allegations in the Underlying Complaint and comparing them to the insurance policy.").

As noted previously, the parties relied solely on Pennsylvania law despite the language of the Policy that appears to require application of Illinois law. As a general matter, Illinois courts also decide coverage disputes by comparing the allegations of the underlying complaint to the policy. *See Fremont Compensation Ins. Co. v. Ace-Chicago Great Dane Corp.*, 710 N.E.2d 132, 136 (Ill. App. Ct. 1999); *Lexmark Int'l Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001) ( "The general rule, recited in case after case, is that it is only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, which should determine whether an insurer owes a duty to defend an action brought against an insured.").

Illinois law, however, is not as unforgiving as Pennsylvania law. The general rule does not forbid a court from looking beyond the allegations in the underlying complaint. *Clarendon Am. Ins. Co. v. B.G.K. Sec. Servs., Inc.*, 900 N.E.2d 385, 392 (Ill. App. Ct. 2008). Courts applying Illinois law in the insurance context may examine extrinsic facts gathered during discovery to decide coverage issues "as long as they do not bear upon issues in the underlying litigation." *Mutlu v. State Farm Fire & Cas. Co.*, 785 N.E.2d 951, 962 (Ill. App. Ct. 2003); *Am. Country Ins. Co. v. Cline*, 722 N.E.2d 755, 764 (Ill. App. Ct. 1999) (noting that court need not wear "judicial blinders" and may look beyond the complaint at other evidence appropriate to a summary judgment motion). Accordingly, the court will address the factual record developed in the underlying litigation.

Without addressing the credibility of the individuals deposed, the Court concludes that the testimony of Rossi and his companion on the evening of the incident, Mr. Luptak, cannot be read

14

to assert a negligence claim. Rossi said that a drunk woman walked by him and spilled a drink on his shirt. (Pl.'s Mot. for Summ. J. Ex. D [Rossi Dep.] at 27.) The two exchanged words and she sought out two bouncers. (*Id*.) Rossi testified that the bouncers did not speak to him but simply grabbed him by his arm, picked him up, and carried him out, despite his request that the bouncers not touch him. (*Id*. at 27, 31.) He then claimed "[t]hey dropped me on the floor." (*Id*.) At that time, he was getting punched, hit, and kicked. (*Id*.) Luptak stated that the bouncers dumped Rossi "like you would dump a trash can. And then they dragged him out." (Def.'s Answer to Mot. for Summ. J. Ex. B [Luptak Dep.] at 36.) Luptak testified that "[i]t kind of looked like they slammed him on the ground." (*Id*.) Rossi testified that after he was dropped, the bouncers picked him up and continued dragging him although he was screaming because they were grabbing him by his dislocated shoulder. (*Id*. at 32.) They dragged him down the steps and out the front door. (*Id*. at 32, 35-36.)

This is a terrible tale of bouncers run amok, for which they should be held responsible if the allegations are true. But this is not the stuff of negligence. Rossi's injuries do not arise out of a negligent removal by the bouncers. Rather, he was grabbed by the arm and dropped to the ground. He was also punched, hit, and kicked. He was then dragged out of the establishment. This belligerent manhandling describes a series of violent intentional acts committed against a person who said that he did not want to be touched. The Rossi Complaint alleges that Rossi sustained his injuries when one or more persons assaulted him. These allegations are clearly excluded by the Policy, and the record only confirms the applicability of the exclusion.

## IV. CONCLUSION

Because the Assault and Battery Exclusion applies, the Court grants First Mercury's summary judgment motion and declares that it has no duty to defend or indemnify against the underlying action under the Policy. An Order consistent with this Memorandum will be docketed separately.